IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

ANDREW KING,                              )
                                          )
                  Plaintiff,              )          2:19-CV-00992-DSC
                                          )
        vs.                               )
                                          )
ALLEGHENY    COUNTY    SHERIFF'S          )
OFFICE,  NEW  MARTINSVILLE  POLICE        )
DEPARTMENT, OFFICER JASON K. UTT,         )
OFFICER  FRIEND  ESTEP,   NORTHERN        )
REGIONAL  CORRECTIONAL  FACILITY,         )
ARRESTING     OFFICER     VINCENT         )
DICENZO  III,   NORTH  VERSAILLES         )
POLICE DEPARTMENT,                        )
                                          )
                  Defendants,             )

## REPORT AND RECOMMENDATION

**Cynthia Reed Eddy, Chief United States Magistrate Judge.**

        I.      **Recommendation**

        This civil rights action was initiated in this court on August 12, 2019, by Plaintiff Andrew

King against the following Defendants: the Allegheny County Sheriff's Office ("ACSO"); the

New Martinsville Police Department ("NMPD"); Officer Jason K. Utt; Officer Friend Estep; the

Northern Regional Correctional Facility ("NRCF");[1] Officer Vincent DiCenzo, III; and the North

Versailles Police Department ("NVPD").[2] *See* Compl. (ECF No. 1) at ¶¶ 5-11.  Plaintiff asserts

causes of action against Defendants pursuant to 42 U.S.C. § 1983 through the Fourth, Eighth, and

Fourteenth Amendments to the United States Constitution. *Id*. at ¶¶ 40-58. This court has subject

matter jurisdiction over the controversy pursuant to 28 U.S.C. § 1331. *Id*. at ¶ 2.

---

[1] The NCRF is a state prison located in Moundsville, West Virginia.

[2] Because the NMPD, the NRCF, and Officers Utt and Estep are all citizens of West Virginia,
these Defendants will be referred to where appropriate as the "West Virginia Defendants."

1

Presently before the court are various motions by all Defendants.  Specifically, the ACSO moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (ECF No. 16).  Defendants NMPD and Officers Utt and Estep move to dismiss the Complaint for lack of personal jurisdiction, for failure to state a claim, and in the alternative, for a change of venue. (ECF No. 24).  Defendant NRCF moves to dismiss the Complaint for lack of personal jurisdiction. (ECF No. 10).  Finally, Defendants NVPD and Officer DiCenzo move for judgment on the pleadings. (ECF Nos. 31, 47).  For the reasons that follow, it is respectfully recommended that the motions to dismiss for lack of jurisdiction filed by the West Virginia Defendants be granted; the motion to dismiss for failure to state a claim filed by the ACSO be granted; and the motion for judgment on the pleadings filed by the NVPD and Officer DiCenzo be granted in part and denied in part.

**II.     Report**

### A.  Factual and Procedural History

Plaintiff Andrew King has a fraternal twin brother, Alexander King.[3]  According to Plaintiff, the events leading up to the filing of this Complaint result from a case of mistaken identity.  Specifically, Plaintiff asserts that Officer DiCenzo of the NVPD arrested an individual identifying himself as "Andrew King."  "Andrew King" was preliminarily arraigned before a magisterial district judge and given a nonmonetary bond and conditional release to appear at a preliminary hearing scheduled for January 18, 2018.

"Andrew King" failed to appear at his preliminary hearing, and on February 23, 2018, a

---

[3] According to Plaintiff, Plaintiff "has long hair whereas Alexander King has short hair and a receding hair line. The brothers have different eye colors and Plaintiff has numerous tattoos on his arm and leg whereas Alexander King does not." Compl. (ECF No. 1) at ¶ 23.

bench warrant was issued by the ACSO for "Andrew King."  On April 21, 2018, Officers Utt and Estep of the New Martinsville Police Department took Plaintiff into custody at his home in West Virginia pursuant to the bench warrant. Compl. (ECF No. 1) at ¶ 12.  Plaintiff avers that the individual actually arrested by Officer DiCenzo and the NVPD was Plaintiff's fraternal twin brother, Alexander King. *Id*. at ¶ 13.  According to Plaintiff, he informed Officer Utt of this mistake,[4] but Plaintiff nevertheless spent one evening at the NMPD and then six days at the NRCF. *Id*. at ¶ 18.  Plaintiff claims that he and other family members repeatedly contacted both entities to make them aware of this mistake; and nevertheless, neither Defendant undertook a reasonable investigation. *Id*. at ¶¶ 25-32.  Plaintiff claims that he suffered "threats of physical violence and rape, denial of essential medication and extreme hardship" while incarcerated. *Id*. at ¶ 33.

As a result of this incident, on August 12, 2019, Plaintiff filed the instant Complaint against Defendants in the Western District of Pennsylvania, setting forth various claims pursuant to Section 1983.  After service was completed, Defendants NRCF (ECF Nos. 10, 11), ACSO (ECF Nos. 16, 17), and NMPD, along with Officers Utt and Estep (ECF Nos. 24, 25), all filed motions to dismiss and briefs in support thereof pursuant to Fed.R.Civ.P. 12.  The NVPD and Officer DiCenzo have filed a motion for judgment on the pleadings.[5]  Plaintiff filed responses to these

---

[4] Plaintiff avers that Officers Utt and Estep were aware that Alexander King often provided Plaintiff's information to authorities, as this had happened in the past. Compl. (ECF No. 1) at ¶ 18. In fact, according to Plaintiff, Alexander King is known to the West Virginia Defendants, having been previously detained by both. *Id*. at ¶ 21.

[5] Initially, on November 25, 2019, the NVPD and Officer DiCenzo filed an Answer to the Complaint. (ECF No. 12).  Then, without explanation, on May 5, 2020, these Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b) and brief in support thereof. (ECF Nos. 31, 32). Thus, on June 2, 2020, Plaintiff filed a motion to strike that motion to dismiss as being filed improperly. (ECF No. 43).  These Defendants filed a response to the motion to strike on June 15, 2020. (ECF No. 47). On August 21, 2020, this Court denied the motion to strike, and concluded that it would treat Defendants' motion to dismiss as a motion for judgment on the pleadings. (ECF No. 49).

motions. (ECF Nos. 34-36, 50).  The West Virginia Defendants filed replies. (ECF Nos. 37, 48).

All motions are now ripe and ready for disposition.

### C.  Standard of Review

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a

complaint for "lack of personal jurisdiction." Fed.R.Civ.P. 12(b)(2).  Where a defendant has

moved to dismiss a complaint for lack of personal jurisdiction, "the plaintiff bears the burden of

establishing with reasonable particularity sufficient contacts between the defendant and the forum

state." *Provident Nat''l. Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987).

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  The reviewing court must "determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515

F.3d 224, 233 (3d Cir. 2008).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual

allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements

necessary to obtain relief under a legal theory of recovery. *Twombly*, 550 U.S. at 561.  Thus,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555).  The

---

[6] Moreover, "[t]he Court reviews a motion for judgment on the pleadings pursuant to Rule 12(c) under the same standard as a motion to dismiss pursuant to Rule 12(b)(6)." *Katzenmoyer v. City of Reading, Pa.*, 158 F. Supp. 2d 491, 496 (E.D. Pa. 2001).  Thus, this Court will not set forth a separate standard of review for the motion for judgment on the pleadings filed by the NVPD and Officer DiCenzo.

factual and legal elements of a claim should be separated, with the court accepting all well-pleaded facts as true and disregarding all legal conclusions. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010). Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may take into consideration "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993).

### D.  Discussion

#### 1.  *West Virginia Defendants*

This court will first consider the motions to dismiss for lack of personal jurisdiction filed by the West Virginia Defendants. (ECF Nos. 10, 24). They contend that the Complaint filed against them should be dismissed pursuant to Fed. Rule Civ. Pro. 12(b)(2), as Pennsylvania does not have personal jurisdiction over these West Virginia individuals and entities.

"Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). Thus, because this court sits in the Western District of

Pennsylvania, the court applies Pennsylvania's long arm statute, which provides "for jurisdiction 'based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States.'" *Id*. (quoting 42 Pa.C.S. § 5322(b)). "Accordingly, in determining whether personal jurisdiction exists, [this court] ask[s] whether, under the Due Process Clause, the defendant has certain minimum contacts with ... [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. (internal quotation marks omitted).

There are two ways to establish personal jurisdiction over a defendant: general and specific. *See id*. "[T]o assert general jurisdiction in Pennsylvania over an individual, a plaintiff bears the burden of proving the individual's presence or domicile in the Commonwealth at the time of service, or the individual's consent to suit." *Agri-Mktg., Inc. v. ProTerra Sols., LLC*, 2018 WL 1444167, at *5 (E.D. Pa. 2018). For non-resident defendant corporations, courts may exercise general jurisdiction "over any party that possesses 'continuous and systematic' contacts with the forum state, regardless of whether the claim results from the party's forum-related activities." *Kurz v. Holiday Hosp. Franchising, LLC*, 2019 WL 5068646, at *3 (E.D. Pa. 2019).

"[S]pecific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." *Agri-Mktg., Inc.*, 2018 WL 1444167, at *5.

> The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have purposefully directed [its] activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice.

*O'Connor*, 496 F.3d at 317 (internal citations and quotation marks omitted).

It is Plaintiff's position that he has established both general and specific jurisdiction over

the West Virginia Defendants. *See* Pl.'s Br. (ECF No. 35) at 5-6 (arguing Plaintiff has established both general and specific jurisdiction over the NRCF); Pl.'s Br. (ECF No. 36) at 5-6 (arguing Plaintiff has established both general and specific jurisdiction over the NMPD and Officers Utt and Estep).

This court will first consider the non-individual West Virginia entities, the NRCF and the NMPD. Both the NRCF and the NMPD are West Virginia entities for which general jurisdiction can only be established if they engage in "systematic and continuous contacts" with Pennsylvania. Plaintiff has asserted no facts to establish that either NRCF or NMPD have any such contacts. Thus, Plaintiff has failed to meet his burden, and this court concludes that Plaintiff has not established general jurisdiction over these defendants.

With respect to specific jurisdiction for the NMPD, it is Plaintiff's position that its acting intentionally upon a bench warrant issued in Pennsylvania is adequate to establish specific jurisdiction in Pennsylvania. Pl.'s Br. (ECF No. 36) at 6. As to the NRCF, it is Plaintiff's position that incarcerating an individual arrested pursuant to a Pennsylvania bench warrant is sufficient to establish specific jurisdiction in Pennsylvania. Pl.'s Br. (ECF No. 35) at 6.

As discussed *supra*, the very first requirement to establish specific jurisdiction is that "the defendant must have purposefully directed [its] activities at the forum." *O'Connor*, 496 F.3d at 317. Moreover, the "exercise of jurisdiction" must "otherwise comport[] with fair play and substantial justice." *Id*.

Here, Plaintiff's contention that acting upon a Pennsylvania bench warrant is adequate to establish specific jurisdiction over out-of-state defendants does not satisfy the aforementioned criteria. To conclude otherwise would permit law enforcement located in any state to be haled into Pennsylvania simply for carrying out their law enforcement responsibilities in their home states.

The fact that this bench warrant was issued in Pennsylvania, as opposed to any other state, was merely incidental. Further, such overreach does not "comport with fair play and substantial justice" necessary to establish specific jurisdiction. *See Steelman v. Carper*, 124 F.Supp.2d 219, 224 (D.Del. 2000) (holding that an out-of-state police officer's act of extraditing an arrestee to the forum state did not constitute sufficient minimum contacts or purposeful availment to support a finding of either general or specific personal jurisdiction in the forum state). Therefore, this court recommends that the NMPD and NRCF be dismissed without prejudice to Plaintiff's ability to re-file the complaint against them in a court which has jurisdiction.

Turning to the individual defendants, Officers Estep and Utt, it is clear that Plaintiff has not asserted facts to establish Pennsylvania's personal jurisdiction over these individuals. They are not Pennsylvania residents, were not served in Pennsylvania, and have not consented to suit in Pennsylvania. Furthermore, as with the NMPD, the fact that this was a Pennsylvania bench warrant, as opposed to a bench warrant from any other state, was merely incidental, not purposeful. It does not comport with fair play and substantial justice for these individuals to be haled into another state merely due to performing their law enforcement duties in their own state. *See Steelman*, 124 F.Supp.2d at 224. Accordingly, this court recommends that Officers Utt and Estepp be dismissed from this case without prejudice to Plaintiff's ability to refile the complaint against them in a state with jurisdiction.

### 2. *The ACSO and the NVPD*

The ACSO moves for dismissal of the complaint against them pursuant to Fed. Rule Civ. Pro. 12(b)(6). (ECF Nos. 15, 16). The NVPD moves for judgment on the pleadings pursuant to Fed. Rule Civ. Pro. 12(c). (ECF Nos. 31, 32). Plaintiff does not set forth any claims specific to the NVPD, but does allege that the bench "warrant was issued due to the recklessly sloppy police

work of Arresting Officer DiCenzo and the Allegheny County Sheriff's Office who actually arrested Plaintiff's brother in North Versailles Township in Pennsylvania." Compl. (ECF No. 1) at ¶ 13. According to Plaintiff, "[a] quick investigation by any named Defendant would have revealed that the Defendants were arresting and detaining the wrong man." *Id*. at ¶ 26. Plaintiff contends that these allegations are adequate to establish violations pursuant to Section 1983 of Plaintiff's Fourth and Fourteenth Amendment rights. *Id*. at ¶¶ 40-54.

As an initial matter, Plaintiff's Section 1983 suit against the NVPD and the ACSO is problematic. "Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials. *See* 42 U.S.C. § 1983." *Gresh v. Cty.*, 2016 WL 1162320, at *3 (M.D. Pa. 2016). "[T]o establish a claim under Section 1983, plaintiff must show a deprivation of a right secured by the Constitution and the laws of the United States...by a **person** acting under color of state law." *Id*. (internal quotation marks omitted; emphasis added).

With respect to the NVPD, "local police departments are not 'persons' who can be sued under [Section 1983]. A police department is considered a subunit of the city government and not distinct from the government at large because the department is 'merely a vehicle through which the city fulfills its policing functions.'" *Credico v. W. Goshen Police*, 2013 WL 6077168, at *2 (E.D. Pa. 2013). Similarly, "a county sheriff's office is considered a 'sub-unit of [the] County' for the purposes of Section 1983 litigation." *Gresh*, 2016 WL 1162320, at *4. Based on the foregoing, Plaintiff may not bring a Section 1983 claim against either the NVPD or the ACSO, as neither entity is a "person" that may be sued pursuant to Section 1983. Accordingly, this Court recommends that both the ACSO and the NVPD be dismissed from this case with prejudice.

Although Plaintiff has sued the wrong parties, and those parties must be dismissed with

prejudice, this Court recommends that Plaintiff be granted leave to amend the complaint to sue the correct parties, the Borough of North Versailles and Allegheny County. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.").   In doing so, Plaintiff should bear in mind that "to establish municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom, or practice of the municipal defendant that results in the constitutional violation." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690-91 (1978).

### 3. *Officer DiCenzo*

Finally, Officer DiCenzo of the NVPD moves for judgment on the pleadings as to the claims against him because Plaintiff has failed to state a claim for either false arrest or false imprisonment against Officer DiCenzo. (ECF No. 32).  Specifically, Officer DiCenzo asserts that he never arrested Plaintiff; rather, Plaintiff was arrested by Officers Estep and Utt of the NMPD. Defs.' Br. (ECF No. 32) at 5.  Furthermore, Officer DiCenzo contends that "the Complaint presents no facts to show that [] Officer DiCenzo [] made any request for a warrant or that they failed to check between Plaintiff's identifiers and those listed on the warrant." *Id*. at 6.  Plaintiff responds that these constitutional violations "came about due [to] the arrest and [mis]identification of his brother, which was initiated by the [Officer DiCenzo and the NVPD]." Pl.'s Br. (ECF No. 50) at 5.  It is Plaintiff's position that he "should be allowed to explore the steps that that [these] Defendants took in arresting and processing Plaintiff's brother as the[ir] activities [] resulted in the erroneously issued warrant which led to Plaintiff's arrest." *Id*.

### a. Applicable Law

The seminal case in the Third Circuit regarding issues of mistaken arrest is *Berg v. County of Allegheny*, 219 F.3d 261 (3d Cir 2000). In that case, Richard Gardner, a supervisor at Allegheny County Adult Probation Services requested an arrest warrant for Paul Banks, who had violated conditions of his parole. *Id*. at 266. A judge approved the warrant, and Gardner sent the information to Virginia Demko, the warrant clerk responsible for issuing arrest warrants in Allegheny County. *Id*. In generating the warrant, Demko inadvertently transposed two numbers, which resulted in an arrest warrant being issued for Berg instead of Banks. *Id*. at 267. Berg was then arrested by Constable Glenn Allen Wolfgang and spent five days in jail before being released due to the error in issuing the warrant. *Id*.

Berg instituted a lawsuit against Gardner, Demko, Wolfgang, and Allegheny County due to his mistaken arrest and detention. Specifically, "Berg allege[d] he was subjected to false arrest, false imprisonment, and denial of due process in violation of 42 U.S.C. §§ 1983 and 1985(3), and the Fourth, Fifth, and Fourteenth Amendments." *Id*. at 268. The District Court granted summary judgment in favor of all defendants, and Berg appealed to the Court of Appeals for the Third Circuit.

In considering the aforementioned claims, the appellate court pointed out that generally speaking, false arrest claims are governed by the Fourth Amendment, but "recognize[d] the possibility that some false arrest claims might be subject to a due process analysis." *Id*. at 269. In considering Berg's Fourth Amendment claims, the appellate court set forth

> a three-step process. First, [the Court] must determine whether [the plaintiff] was seized for Fourth Amendment purposes. If so, [the Court] next determines whether that seizure violated the Fourth Amendment's prohibition against unreasonable seizures. Finally, if there has been a Fourth Amendment violation, [the Court] must determine which of the defendants, if any, may be held liable for it.

*Id*. The appellate court concluded that Berg was seized for Fourth Amendment purposes when he

was detained and jailed and that the seizure was unreasonable as no warrant should have ever been issued for Berg's arrest.  The appellate court then went on to determine which, if any, defendants could be potentially liable for Berg's mistaken arrest.  In doing so, the appellate court pointed out that "[a]s a general rule, a government official's liability for causing an arrest is the same as for carrying it out. As the Supreme Court has explained, § 1983 anticipates that an individual will be responsible for the natural consequences of his actions." *Id*. at 272 (internal citations and quotation marks omitted).

In considering whether summary judgment was appropriate with respect to Demko and Gardner pursuant to the Fourth Amendment, the appellate court held that "Berg must point to some evidence from which a reasonable jury could conclude that [these individuals] **intentionally** caused [Berg's] arrest." *Id*. at 274 (emphasis added).  The court went on to point out that "where a defendant does not intentionally cause the plaintiff to be seized, but is nonetheless responsible for the seizure, it may be that a due process 'deliberate indifference' rather than a Fourth Amendment analysis is appropriate." *Id*.  The appellate court was clear that "mere negligence" is not enough to hold a defendant liable under these circumstances. *Id*.  With these principles in mind, this Court will analyze Plaintiff's Fourth and Fourteenth Amendment claims.

b.  <u>Fourth Amendment</u>

In considering the aforementioned three-step process utilized to evaluate Fourth Amendment claims, there is no dispute that Plaintiff was seized when he was arrested and detained in West Virginia pursuant to the bench warrant.  Furthermore, Plaintiff has set forth adequate facts that, if true, would render the seizure unreasonable, because it is Plaintiff's position that it was his brother, not him, for whom the bench warrant should have been issued.  Thus, this Court is left to determine whether Plaintiff has alleged sufficient facts to establish Officer DiCenzo's liability.  In

12

his complaint, Plaintiff avers that Officer DiCenzo's police work was "recklessly sloppy." Compl. (ECF No. 1) at ¶ 13. Thus, even viewing the facts in the light most favorable to Plaintiff, Plaintiff's allegation of "recklessly sloppy" police work falls short of pleading intentionality. Therefore, this Court recommends that Plaintiff's Fourth Amendment claim against Officer DiCenzo be dismissed without prejudice to Plaintiff's right to amend the complaint.

### c. Fourteenth Amendment

As discussed *supra*, a due process analysis pursuant to the Fourteenth Amendment turns on "deliberate indifference." "[T]he term deliberate indifference is generally defined to require only knowledge of a serious risk of harm[.]" *Berg*, 219 F.3d at 275. "[I]t also implies a failure to take reasonably available measures to reduce or eliminate that risk. Where no reasonable measures exist, neither can deliberate indifference." *Id*. Instantly, Plaintiff has pleaded that Officer DiCenzo engaged in "recklessly sloppy police work," which resulted in an arrest warrant being issued for the wrong person. Compl. (ECF No. 1) at ¶ 13. According to Plaintiff, his brother lied to Officer DiCenzo regarding his identity, and Officer DiCenzo did not take reasonable steps to verify who he was actually arresting, which led to the warrant being issued for Plaintiff. At this stage of proceedings, the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583. Accepting these facts as true, such allegations could rise to the level of deliberate indifference to support a due process claim. Thus, this Court recommends that Officer DiCenzo's motion for judgment on the pleadings be denied as to this claim.

### E. Conclusion

For all the foregoing reasons, it is respectfully recommended that the motions to dismiss filed by Defendants NRCF, NMPD, and Officers Utt and Estep for lack of personal jurisdiction be

granted without prejudice to Plaintiff's right to file a complaint in a court with jurisdiction over these Defendants.  This Court also recommends that the motion to dismiss for failure to state a claim filed by the ACSO and the motion for judgment on the pleadings filed by the NMPD be granted without prejudice to Plaintiff's right to file a complaint naming the correct parties.  Finally, this Court recommends that Officer DiCenzo's motion for judgment on the pleadings be granted in part and denied in part.  Specifically, it is recommended that Officer DiCenzo's motion for judgment on the pleadings with respect to a Fourth Amendment claim be granted without prejudice to Plaintiff's right to amend the complaint.  It is further recommended that Officer DiCenzo's motion for judgment on the pleadings with respect to a Fourteenth Amendment claim be denied.

Any party is permitted to file Objections to this Report and Recommendation to the assigned United States District Judge. In accordance with 28 U.S.C. § 636(b), Fed.R.Civ.P. 6(d) and 72(b)(2), and LCvR 72.D.2, the parties must file objections, if any, by October 19, 2020. The parties are cautioned that failure to file Objections within this timeframe "will waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections shall have fourteen days from the date of service of objections to respond.

DATED this 5th day of October, 2020.

s/Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

cc:    The Honorable David S. Cercone

       Counsel of Record
       (via ECF electronic notification)