IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| ANDREW KING, | ) | |
| | ) | |
| Plaintiff, | ) | 2:19-CV-00992-DSC |
| | ) | |
| vs. | ) | |
| | ) | |
| ARRESTING  OFFICER  VINCENT | ) | |
| DICENZO III, COUNTY OF ALLEGHENY, | ) | |
| NORTH VERSAILLES TOWNSHIP, | ) | |
| | ) | |
| Defendants, | ) | |

## REPORT AND RECOMMENDATION

**Cynthia Reed Eddy, Chief United States Magistrate Judge.**

### I.      Recommendation

This civil rights action was initiated in this court on August 12, 2019, by Plaintiff Andrew King, against numerous Defendants.   On November 23, 2020, Plaintiff filed an Amended Complaint against Defendants Officer Vincent DiCenzo, III, North Versailles Township, and Allegheny County, asserting claims pursuant to 42 Pa.C.S. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. *See* Amend. Compl. (ECF No. 56).

Presently before the Court is a motion to dismiss the Amended Complaint pursuant to Fed. Rule Civ. Pro. 12(b)(6) filed by Defendant Allegheny County. (ECF No. 66).   For the reasons that follow, it is respectfully recommended that Allegheny County's motion to dismiss be granted.

### II.      Report

#### A.  Factual and Procedural History

Plaintiff Andrew King has a fraternal twin brother, Alexander King.[1]   According to

---

[1] According to Plaintiff, Plaintiff "has long hair whereas Alexander King has short hair and a receding hair line. The brothers have different eye colors and Plaintiff has numerous tattoos on his arm and leg whereas Alexander King does not." Amend. Compl. (ECF No. 56) at ¶ 18.

Plaintiff, the events leading up to the filing of this Amended Complaint result from a case of mistaken identity.  Specifically, Plaintiff asserts that Officer DiCenzo of the North Versailles Police Department ("NVPD") arrested an individual identifying himself as "Andrew King."  The individual posing as "Andrew King" was preliminarily arraigned before a magisterial district judge and given a nonmonetary bond and conditional release to appear at a preliminary hearing scheduled for January 18, 2018.

The individual posing as "Andrew King" failed to appear at his preliminary hearing, and on February 23, 2018, a bench warrant was issued by Allegheny County[2] for "Andrew King."  On April 21, 2018, Officers Utt and Estep of the New Martinsville Police Department took Plaintiff into custody at his home in West Virginia pursuant to the bench warrant. Amend. Compl. (ECF No. 56) at ¶ 8.  Plaintiff avers that the individual actually arrested by Officer DiCenzo and the NVPD was Plaintiff's fraternal twin brother, Alexander King. *Id*. at ¶ 10.

As a result of this incident, on August 12, 2019, Plaintiff filed a Complaint against numerous defendants in the Western District of Pennsylvania, setting forth various claims pursuant to Section 1983.[3]  On November 18, 2020, the Honorable David S. Cercone adopted this Court's report and recommendation, wherein the West Virginia Defendants were dismissed from the case for lack of jurisdiction.  In addition, this Court dismissed the ACSO and NVPD because they are not entities subject to suit pursuant to Section 1983, and Plaintiff was permitted to file an amended complaint naming the correct entities. (ECF No. 54).

On November 23, 2020, Plaintiff filed the Amended Complaint asserting four causes of

---

[2] Specifically, Plaintiff avers the Allegheny County Sheriff's Office ("ACSO") issued the bench warrant.

[3] Specifically, Plaintiff's Complaint asserted claims against defendants who were located in West Virginia, as well as the Allegheny County Sheriff's Office ("ACSO") and the NVPD.

action against all defendants, including Allegheny County, pursuant to Section 1983. (ECF No. 56). Officer DiCenzo and North Versailles Township filed an Answer to the Amended Complaint. (ECF No. 58).  Allegheny County filed the instant motion to dismiss all claims and brief in support thereof. (ECF Nos. 66, 67).  Plaintiff filed a Response, and Allegheny County filed a Reply. (ECF Nos. 69, 70).  The motion is now ripe and ready for disposition.

### B. Standard of Review

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. *Twombly*, 550 U.S. at 561.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555).  The factual and legal elements of a claim should be separated, with the court accepting all well-pleaded facts as true and disregarding all legal conclusions. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010).  Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may take into consideration "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993).

### C. Discussion

Allegheny County contends that all four counts asserted against it should be dismissed for failure to state a claim.[4] *See* Def.'s Br. (ECF No. 67).  In considering the issues set forth by Allegheny County, this Court reviews the law applicable in setting forth a Section 1983 claim against a municipal entity.

"Section 1983 provides a provides a cause of action to redress violations of federal law; it is not a source of substantive rights but is merely a procedural vehicle used to vindicate those rights otherwise protected by federal law." *Rothermel v. Dauphin Cty., Pennsylvania*, 2020 WL 1490774,

---

[4] The claims set forth by Plaintiff in his Amended Complaint are all grounded in Section 1983 violations, and he claims violations of both the Fourth and Fourteenth Amendments, as well as "failure to intervene" and "due process" by Allegheny County.  A claim that an individual has been arrested and detained without probable cause, as Plaintiff is claiming here, is a Fourth Amendment claim. *See Diaz v. Bullock*, 268 F. Supp. 3d 640, 647 (D.N.J. 2017) (internal quotation marks omitted) ("The Fourth Amendment protects against unreasonable seizures of the person…. A false imprisonment claim that is based on an arrest without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures.").  On the other hand, "the Due Process Clause of the Fourteenth Amendment is the appropriate avenue for redress in situations … when a person is initially and lawfully arrested pursuant to a valid warrant while at the same time (or thereafter) claiming that he or she is not the person who is wanted." *Id*. at 656.  In other words, these are alternative bases for relief.

at *7 (M.D. Pa. 2020), adopted, 2020 WL 1467267 (M.D. Pa. 2020), aff'd, 2021 WL 2589136 (3d Cir. 2021),  "To establish a claim under § 1983, a plaintiff must demonstrate a deprivation of a right secured by the Constitution and laws of the United States ... by a person acting under color of state law." *Id*. (internal quotation marks omitted).

A municipal entity, such as Allegheny County, "cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, [a plaintiff] must demonstrate that the violation of his rights was caused by either a policy or a custom of the municipality." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000). "Not all state action rises to the level of a custom or policy. A policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotation marks omitted). "Customs are practices of state officials ... so permanent and well settled as to virtually constitute law." *Berg*, 219 F.3d at 275 (internal quotation marks omitted).  "The plaintiff must further allege that a policy or custom of [the defendants] was the moving force behind the [constitutional] violation." *Rothermel*, 2020 WL 1490774, at *8. "Thus, any analysis of a claim under *Monell* requires separate consideration of two distinct issues: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation." *Id*. (internal quotation marks omitted).

Instantly, all causes of action asserted against Allegheny County must satisfy the aforementioned elements to state a Section 1983 claim.  A review of the Amended Complaint reveals Plaintiff is complaining about Allegheny County's policy for issuing warrants. *See* Amend. Compl. (ECF No. 56) at ¶ 9.  Specifically, it appears Plaintiff is complaining that Allegheny

County does not have adequate policies in place to ensure that the individuals listed on warrants are correct and that there are adequate procedures in place to rectify the situation when Allegheny County learns of a mistake. *See id*. at ¶¶ 22-42.

Before this Court can evaluate the policies of Allegheny County, it must determine whether Plaintiff has suffered a constitutional injury. *See Rothermel*, 2020 WL 1490774, at *18 ("[A] municipality may not incur *Monell* liability where [] the officials have inflicted no constitutional injury."). In *Baker v. McCollan*, 443 U.S. 137 (1979), the Supreme Court held "that where a detainee has been arrested pursuant to a facially valid warrant and subsequently challenges his or her resulting detention on grounds of mistaken identification and failure to investigate whether the correct person has been detained, he or she generally has no constitutional claim, provided the length of his or her detention was reasonable." *Rothermel*, 2020 WL 1490774, at *17; *see also Diaz v. Bullock*, 268 F. Supp. 3d 640, 648 (D.N.J. 2017) ("[I]n assessing whether probable cause existed in the case of a mistaken-identity arrest, a court must consider (1) whether there was probable cause to arrest the true target, and (2) whether the mistake was reasonable.").

Thus, this Court's first inquiry is to determine whether Plaintiff has asserted facts that, if true, demonstrate that the warrant issued was not a facially valid warrant.  In *Berg*, the Third Circuit held that "where a warrant was erroneously issued for the arrest of the plaintiff who was innocent of any crime, the warrant could not supply a constable with probable cause to arrest him especially because the plaintiff presented dispositive, exculpatory evidence to the constable at the time of arrest." *Rothermel*, 2021 WL 2589136, at *3 (3d Cir. 2021) (citing *Berg*, 219 F.3d at 267-268). However, "[w]hen a defendant is named in a bench warrant, probable cause for arrest exists, and any Fourth Amendment argument arising out of the arrest is without merit even if the bench warrant later turns out to be invalid." *Hanks v. Cty. of Delaware*, 518 F. Supp. 2d 642, 649 (E.D.

6

Pa. 2007).  "This is true as long as a reasonably well-trained officer would not have known that the arrest was illegal despite there being a bench warrant." *Id*.

Here, Plaintiff was arrested pursuant to a bench warrant issued for Andrew King, so it could arguably be considered a facially valid bench warrant.  However, Plaintiff also avers that his "brother is known to the New Martinsville Police Department and Northern Regional Correction facility as Alexander King has previously been detained by both institutions." Amend. Comp. (ECF No. 56) at ¶ 17.  Plaintiff further contends that "arresting officials in West Virginia knew or should have known that Alexander King had a long history of providing false information to authorities." *Id*. at ¶ 19.  Plaintiff states that he "immediately stated to authorities in West Virginia that he was not the correct individual being sought in Allegheny County and that in fact the correct individual was his twin brother, Alexander King." *Id*. at ¶ 11.  According to Plaintiff, Officer Utt told Plaintiff "that nonetheless he would need to take Plaintiff into custody and that Plaintiff, 'had permission to kick his twin brother's butt.'" *Id*. at ¶ 12.

Based on the foregoing, at this stage of the litigation, Plaintiff is entitled to discovery to determine whether a reasonably well-trained officer should have known that that the arrest of Plaintiff was in error.  Accordingly, it is respectfully recommended that Plaintiff has set forth adequate facts at this stage of litigation to demonstrate that his harm may have been caused by a constitutional violation, and therefore this Court will consider whether Allegheny County could be responsible for that violation.

Pursuant to *Monell*, "proof of the mere existence of an unlawful policy or custom is not enough to maintain a § 1983 action. A plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).  "[C]onclusory statements, without more, fail to adequately allege

that [a municipality] adopted and maintained a policy, custom, or practice that resulted in a violation of [a plaintiff's] rights." *Buonconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 441 (E.D. Pa. 2015). "Once a § 1983 plaintiff identifies a municipal policy or custom, he must 'demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.'" *Berg*, 219 F.3d at 276 (quoting *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)). "If, [] the policy or custom does not facially violate federal law, causation can be established only by 'demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'" *Id*. (quoting *Brown*, 520 U.S. at 407).

Here, Plaintiff contends that he was arrested pursuant to a warrant issued under "the policies and practices of the Allegheny County Sheriff's Office." Amend. Comp. (ECF No. 56) at ¶ 9. A liberal reading of the Amended Complaint sets forth Plaintiff's belief that the ACSO does not have policies and procedures in place for checking for errors for warrants it receives and then disseminates. *See id*. at ¶ 49 ("Allegheny County [] acted or failed to act in a manner that would correct the error which led to Plaintiff being arrested and detained.").

Case law provides guidance under these circumstances. In *Berg*, *supra*, Richard Gardner, supervisor for Allegheny County Adult Probation Services, requested an arrest warrant be issued for Paul Banks. The warrant was approved by a judge and an Arrest Information Sheet was sent to Virginia Demko, a warrant clerk for Allegheny County. The sheet was correct, but Demko transposed two digits in the criminal complaint and therefore a warrant was issued for Berg, who was subsequently arrested and detained. In considering whether Berg established a Section 1983 *Monell* claim against Allegheny County, the Third Circuit offered the following.

> The record contains no evidence of procedures guarding against Demko's mistake. Expressing considerable knowledge of the warrant-issuing procedures, Gardner

testified that he knew of no "double check" to ensure that warrants were issued in
the correct name. Nor was Gardner aware of any procedure by which he could
check to ascertain if an erroneous warrant had issued. Having employed a design
where the slip of a finger could result in wrongful arrest and imprisonment, there
remains an issue of fact whether the County was deliberately indifferent to an
obvious risk. The County's failure to provide protective measures and fail safes
against Demko's mistake seems comparable to "a failure to equip law enforcement
officers with specific tools to handle recurring situations." *Bryan County*, 520 U.S.
at 409 []. When such a simple mistake can so obviously lead to a constitutional
violation, we cannot hold that the municipality was not deliberately indifferent to
the risk as a matter of law. Accordingly, the County may be liable under *Monell*.

*Berg*, 219 F.3d at 276-77.

The Rothermel Court considered a similar claim against Dauphin County. In *Rothermel*, in
2009, Corporal Randy Orlic of the Pennsylvania State Police filed a criminal complaint against
Melissa **Ann** Rothermel, who was charged with theft of services. In preparing the complaint,
Corporal Orlic utilized the date of birth, social security number and driver's license information
for Melissa **Lee** Rothermel.  It is not clear why Corporal Orlic had this incorrect information for
that complaint, and all other paperwork identified Melissa Ann correctly, and she did appear in
court.  However, on February 3, 2010, when Melissa Ann signed a probation form, that form
contained the date of birth for Melissa Lee.

Melissa Ann was subsequently not in compliance with the conditions of her probation, and
she failed to appear for revocation proceedings.  A bench warrant was issued, which was prepared
by the clerk's office, and utilized the same information contained in Corporal Orlic's complaint.

Subsequently, in February 2015, Pennsylvania State Trooper Grbich saw a vehicle driving
with what appeared to be an expired registration sticker.  Upon running the plate through his
computer system, he learned that the vehicle did not have an expired registration, but learned there
was an outstanding bench warrant for Melissa Ann.  Although the middle names did not match,
other information was identical, and Trooper Grbich stopped the vehicle, which was being driven

by its owner, Melissa Lee. Trooper Grbich detained Melissa Lee, despite her pleas that there must be an error.

Upon being transported to the booking center, Melissa Lee refused to sign documentation that had the name Melissa Ann. Because she was arrested pursuant to a bench warrant, the policy was not to verify the individual's identity with fingerprinting. Accordingly, Melissa Lee was detained for 48 hours, until a treatment specialist at the jail heeded her pleas that there had been an error. Upon investigation, Melissa Lee was released and subsequently filed a Section 1983 lawsuit against numerous defendants, including Dauphin County, which is the entity that issued the bench warrant. She claimed, *inter alia*, "that the 5-step warrant generation process employed by the Clerk of Courts Office and the Sheriff's Office is constitutionally deficient because it does not include an established procedure for a human user to guard against error. She makes the blanket assertion that these policies reflect deliberate indifference on the part of Dauphin County [] so as to have caused the deprivation of Melissa Lee's constitutional rights." *Rothermel*, 2020 WL 1490774, at *16 (internal citations and quotation marks omitted). In considering this claim, the court concluded that "Rothermel has not shown that any county policy or custom caused her injury, nor can she. This *Monell* claim fails on the question of causation because it is clear that the erroneous entries in court records which led to the conflation of the plaintiff's identity with the identity of a state criminal defendant, was the result of a 2009 data entry error by a person who is no longer a party in this case, Corporal Orlic." *Id*.

The instant matter is analogous to *Rothermel*, where the error was made by the arresting officer, and not *Berg*, where the error was made by a County employee. Plaintiff is not able to identify any policy or procedure that Allegheny County could have or should have had in place to confirm whether the information it receives from an arresting officer is correct. The allegations in

the Amended Complaint, even when read in the light most favorable to Plaintiff, allege that to the extent it was involved in processing this warrant, it utilized the exact information it was provided by Officer DiCenzo in issuing the warrant.  Thus, even though Plaintiff may have suffered a constitutional violation, that constitutional violation, as a matter of law, was not caused by any policy or procedure of Allegheny County.  Accordingly, for these reasons, this Court recommends that Allegheny County's motion to dismiss be granted and Allegheny County be dismissed from this case with prejudice.

### E.  Conclusion

For all the foregoing reasons, it is respectfully recommended that the motion to dismiss filed Allegheny County be GRANTED and that Allegheny County be dismissed from this case with prejudice.

Any party is permitted to file Objections to this Report and Recommendation to the assigned United States District Judge. In accordance with 28 U.S.C. § 636(b), Fed.R.Civ.P. 6(d) and 72(b)(2), and LCvR 72.D.2, the parties must file objections, if any, by September 22, 2021. The parties are cautioned that failure to file Objections within this timeframe "will waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections shall have fourteen days from the date of service of objections to respond.

DATED this 8th day of September, 2021.

s/Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

cc:   The Honorable David S. Cercone

Counsel of Record

11

(via ECF electronic notification)